UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

GILLIAN JORDAN, a/k/a GILLIAN                    Case No. 22-BK-40568 (NHL)
MARGARET JORDAN-DE VERTEUIL,

                Debtor.

-----------------------------------------------------------X
GILLIAN JORDAN, a/k/a GILLIAN
MARGARET JORDAN-DE VERTEUIL,

                Plaintiff,                    Adv. Pro. No. 23-AP-01064 (NHL)

    -against-

DOUG NAIDUS, WBL SPE III, LLC,
WORLD BUSINESS LENDERS, LLC,
THE BANK OF LAKE MILLS,
WORLDWIDE LAND TRANSFER,
JOHN DOES 1-3,

                Defendants.

-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## BANK OF LAKE MILLS' MOTION TO DISMISS ADVERSARY COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ............................................................................................................ 1

FACTUAL ALLEGATIONS ........................................................................................... 1

LEGAL STANDARD....................................................................................................... 4

ARGUMENT ................................................................................................................... 6

    I.    BLM JOINS WBL'S MOTION TO DISMISS AS TO ITS ARGUMENTS
        RELATING TO SUBJECT MATTER JURISDICTION AND ABSTENTION. ......... 6

    II.   PLAINTIFF'S RICO CLAIMS AGAINST BLM SHOULD BE DISMISSED
        AS TIME BARRED AND BECAUSE THEY FAIL TO STATE A CLAIM.............. 7

        A.    Plaintiff's RICO Claims are Barred by the Four-Year Statute of
             Limitations..................................................................................................... 8

        B.    Plaintiff's Third Cause of Action Asserted against BLM Fails to Allege
             Necessary Elements of RICO. .......................................................................... 10

       1.    The Complaint Fails to Allege that BLM Engaged in a Pattern of Racketeering
             Activity........................................................................................................11

       2.    The Complaint Fails to Allege that BLM Operated, Managed, Directed or
             Controlled Any Enterprise.................................................................................12

        C.    Plaintiff's Seventh Cause of Action Fails to State a Claim under
             § 1962(d)..................................................................................................... 13

    III.  PLAINTIFF'S SIXTH CAUSE OF ACTION SHOULD BE DISMISSED
        BECAUSE IT FAILS TO STATE A CLAIM AND PLAINTIFF LACKS
        STANDING ........................................................................................................ 13

    IV.  PLAINTIFF'S EQUAL CREDIT OPPORTUNITY ACT CLAIM SHOULD
        BE DISMISSED AS TO BLM BECAUSE IT SIMILARLY IS TIME
        BARRED AND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
        BE GRANTED. .................................................................................................. 15

        A.    The Statute of Limitations on Plaintiff's ECOA Claim began to Run at
             the Time She Executed the Loan Documents in January 2016. .......................... 15

        B.    No Exception to the ECOA's Five-Year Statute of Limitations Applies............ 16

        C.    Plaintiff Has Failed to State a Claim for a Violation of the ECOA.................... 20

    V.   PLAINTIFF'S GBL § 349 CLAIM IS BARRED BY THE STATUTE OF
        LIMITATIONS AND FAILS FOR FAILURE TO STATE A CLAIM. .................... 23

        A.    The GBL § 349 Claim is Barred by the Statute of Limitations. ......................... 23

        B.    Plaintiff does not and Cannot Satisfy the Elements of a GBL § 349 Claim........ 23

1. The Transaction at Issue is a Business-to-Business Transaction, which cannot Form the Basis of a GBL § 349 Claim............................................................24

2. Plaintiffs' Claims of Deception and Misrepresentation are Belied by the Loan Documents............................................................................................................25

3. The Court in the Foreclosure Action Determined the Loan Amounts were Proper, Due, and Owing, and so Plaintiffs have not Suffered an Actual Injury. ..............25

CONCLUSION....................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Morgan Stanley,*
No. 12 CV 7667, 2013 WL 3835198 (S.D.N.Y. July 25, 2013).............................. 18

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
483 U.S. 143 (1987)........................................................................................... 8

*Am. Fed'n of State v. Bristol-Myers Squibb Co.,*
948 F. Supp. 2d 338 (S.D.N.Y. 2013)............................................................. 7, 8

*Anwar v. Fairfield Greenwich Ltd.,*
118 F Supp 3d 591 (S.D.N.Y. 2015)................................................................. 6

*Archer v. Nissan Motor Acceptance Corp.,*
550 F.3d 506 (5th Cir. 2008) ...................................................................... 18, 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................... 4, 5

*Bankers Tr. Co. v. Rhoades,*
859 F.2d 1096 (2d Cir. 1988)............................................................................ 9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................... 4

*Bello v. Rockland Cnty.,*
No. 19 CV 3514, 2020 WL 2319115 (S.D.N.Y. May 11, 2020) .......................... 6

*Bingham v. Zolt,*
66 F.3d 553 (2d Cir. 1995)................................................................................ 9

*BLT Rest. Grp. LLC v. Tourondel,*
855 F. Supp. 2d 4 (S.D.N.Y. 2012) .................................................................. 5

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)................................................................................ 2

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)........................................................................... 11

*DeSuze v. Ammon,*
990 F.3d 264 (2d Cir. 2021)........................................................................... 19

*Diamond v. Charles,*
476 U.S. 54 (1986)......................................................................................... 14

*Doe v. Menefee,*
391 F.3d 147 (2d Cir. 2004)........................................................................... 17

*Exxonmobil Inter-Am. Inc. v. Advanced Info. Eng'g Servs. Inc.,*
328 F. Supp. 2d 443 (S.D.N.Y 2004)............................................................. 24

*Foman v. Davis,*
371 U.S. 178 (1962)......................................................................................... 5

*Gaidon v. Guardian Life Ins. Co. of Am.,*
96 N.Y.2d 201 (2001) ..................................................................................... 23

*Geron v. Reifer (In re Eight-115 Assocs., LLC),*
650 B.R. 43 (Bankr. S.D.N.Y. 2023)................................................................ 5

*Gordon v. First Franklin Fin. Corp.,*
No. 16-CV-0775, 2016 WL 792412 (E.D.N.Y. Feb. 29, 2016) .......................... 16

iii

*Goren v. New Vision Int'l, Inc.*,
 156 F.3d 721 (7th Cir. 1998) ....................................................................................... 12

*Grimes v. Fremont Gen. Corp.*,
 785 F. Supp. 2d 269 (S.D.N.Y. 2011)...................................................................... 18, 20

*Hill v. Curcione*,
 657 F.3d 116 (2d Cir. 2011).......................................................................................... 5

*In re Ditech Holding Corp.*,
 No. 19-10412, 2022 WL 14964188 (Bankr. S.D.N.Y. Oct. 26, 2022) ...................... 19

*In re Integrated Res. Real Est. Ltd. P'ships Sec. Litig.*,
 850 F. Supp. 1105 (S.D.N.Y. 1993)............................................................................... 8

*In re Johnson*,
 No. 09-49420, 2014 WL 4197001 (Bankr. E.D.N.Y. Aug. 22, 2014).................... passim

*In re Merrill Lynch Ltd. P'ships Litig.*,
 154 F.3d 56 (2d Cir. 1998)............................................................................................. 9

*In re Trinsum Grp., Inc.*,
 460 B.R. 379 (Bankr. S.D.N.Y. 2011) ........................................................................... 5

*Jansson v. Stamford Health, Inc.*,
 No. 16-cv-260, 2017 WL 1289824 (D. Conn. Apr. 5, 2017)........................................ 5

*Jordan v. Chase Manhattan Bank*,
 91 F. Supp. 3d 491 (S.D.N.Y. 2015)........................................................................ 18, 20

*Jurgensen v. Hamalian*,
 No. 18-CV-01952, 2019 WL 3291761 (D. Colo. Mar. 7, 2019) ................................ 14

*Katzman v. Victoria's Secret Catalogue*,
 167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................................... 8

*Khepera-Bey v. Santander Consumer USA, Inc.*,
 No. WDQ-11-1269, 2012 WL 1965444 (D. Md. May 30, 2012)................................ 14

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997)........................................................................................................ 9

*L-7 Designs, Inc. v. Old Navy, LLC*,
 647 F.3d 419 (2d Cir. 2011)........................................................................................... 5

*Lillacalenia v. Kit Fed. Credit Union*,
 No. 14CV-151, 2014 WL 3940289 (W.D. Ky. Aug. 12, 2014) .................................. 14

*Lucent Techs. Inc.*,
 420 F. Supp. 2d 253 (S.D.N.Y. 2006)............................................................................ 9

*Lucente v. Cnty. of Suffolk*,
 980 F.3d 284 (2d Cir. 2020).......................................................................................... 19

*Lucente v. Int'l Bus. Machs. Corp.*,
 310 F.3d 243 (2d Cir. 2002)........................................................................................... 6

*Miller v. Int'l Te. & Tel. Corp.*,
 755 F.2d 20 (2d Cir. 1985)........................................................................................... 17

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
 165 F. Supp. 2d 514 (S.D.N.Y. 2001).......................................................................... 13

*New York v. Hendrickson Bros., Inc.*,
 840 F.2d 1065 (2d Cir. 1988)....................................................................................... 17

*Ng v. HSBC Mortg. Corp.*,
 No. 07-CV-5434, 2010 WL 889256 (E.D.N.Y. Mar. 10, 2010)................................. 21, 22, 23

*Nials v. Bank of Am.*,
   No. 13 Civ. 5720, 2014 WL 2465289 (S.D.N.Y. May 30, 2014)............................24

*Oxford Techs., Inc. v. East/West Indus.*,
   No. CV 18-1992, 2019 WL 5696184 (E.D.N.Y. Jul. 24, 2019)............................25

*Papasan v. Allain*,
   478 U.S. 265, (1986)..........................................................................4

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002)....................................................................17

*Phillips v. Better Homes Depot, Inc.*,
   No. 02-CV-1168, 2003 WL 25867736 (E.D.N.Y. Nov. 12, 2003) ........................20

*Powell v. Am. Gen. Fin., Inc.*,
   310 F. Supp. 2d 481 (N.D.N.Y. 2004)......................................................22

*Purchase Real Est. Grp. Inc. v. Jones*,
   No. 05 Civ. 10859, 2010 WL 1837809 (S.D.N.Y. Apr. 30, 2010)........................11

*Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*,
   No. 19CV1045, 2020 WL 1536596 (E.D.N.Y. Mar. 31, 2020) .....................16, 20

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017)....................................................................11

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)............................................................................12

*Rodriguez v. Touchette*,
   No. 19-cv-143, 2020 WL 2322615 (D. Vt. May 11, 2020) ...............................5

*Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art)*,
   593 B.R. 699 (Bankr. S.D.N.Y. 2018)......................................................4

*Rosenson v. Mordowitz*,
   No. 11 Civ. 6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) ........................7

*Rotella v. Wood*,
   528 U.S. 549 (2000)..........................................................................8, 9

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008)...................................................................5

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995)....................................................................24

*Serrano v. Cablevision Sys. Corp.*,
   863 F. Supp. 2d 157 (E.D.N.Y. 2012) ......................................................25

*Solow v. Stone*,
   994 F. Supp. 173 (S.D.N.Y. 1998) ..........................................................5

*Stewart v. Santander Consumer USA Inc.*,
   No. WDQ-11-1269, 2011 WL 4790756 (D. Md. Oct. 6, 2011) ..........................14

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001)............................................................................18

*U.S. ex rel. Raffington v. Bon Secours Health Sys.*,
   285 F. Supp. 3d 759 (S.D.N.Y. 2018).......................................................5

*U.S. v. Davidson*,
   122 F.3d 531 (8th Cir. 1997) ................................................................8

*U1IT4less, Inc. v. FedEx Corp.*,
   896 F. Supp. 2d 275 (S.D.N.Y. 2012).......................................................24

*Veltri v. Bldg. Serv. 32B–J Pension Fund,*
   393 F.3d 318 (2d Cir. 2004)..................................................... 17, 19, 23
*Walker v. City of New York,*
   974 F.2d 293 (2d Cir. 1992)........................................................ 4
*Walker v. Jastremski,*
   430 F.3d 560 (2d Cir. 2005)....................................................... 17
*Wender v. Gilberg Agency,*
   716 N.Y.S.2d 40 (2000)............................................................. 23
*Yanes v. Ocwen Loan Servicing, LLC,*
   No. 13-CV-2343, 2015 WL 631962 (E.D.N.Y Feb. 12, 2015) ................ 24

## Regulations

15 U.S.C. § 1691(a)(1)............................................................... 4, 15, 19
15 U.S.C. § 1691e(f) (2010) ........................................................ 16
18 U.S.C. § 1961(5) .................................................................. 11
18 U.S.C. § 1962 .............................................................. 3, 4, 7, 11
18 U.S.C. §§ 891-894 ....................................................... 3, 14, 15
N.Y. Gen. Bus. Law §349(a) ...................................................... 23
New York GBL § 349 ........................................................... passim
NY Banking Law § 14-a(1) ......................................................... 10
NY General Obligations Law § 5-501 (1) ......................................... 10
NY Penal Law § 190.40 ............................................................. 10

## Other Authorities

Federal Rule of Bankruptcy Procedure Rule 7012(b)............................ 4
Federal Rule of Civil Procedure 12(b)(6) ...................................... 4, 6
Federal Rule of Civil Procedure 15(a)(2) ......................................... 5

## INTRODUCTION

In January 2016, more than seven years ago, Bank of Lake Mills made a business loan to Noah's Ark Preparatory II, Inc. Plaintiff, who owned Noah's Ark, executed a personal guaranty and a mortgage to support it, and Bank of Lake Mills assigned them to World Business Lenders, LLC. In April 2016, Noah's Ark and Plaintiff defaulted on the loan, mortgage and guaranty, respectively. World Business Lenders initiated foreclosure proceedings, and Plaintiff defended and asserted counterclaims. The Supreme Court of Kings County New York entered judgment on the merits in World Business Lenders' favor, and Plaintiff later declared bankruptcy and initiated this adversary proceeding.

Bank of Lake Mills neither participated in the foreclosure, nor filed a proof of claim in this bankruptcy. Yet, Plaintiff named Bank of Lake Mills as a defendant in this adversary proceeding, alleging that Bank of Lake Mills was part of a grand conspiracy orchestrated by World Business Lenders to prey on her. But the New York Supreme Court entered an order declaring that the loan, guaranty and mortgage were all legal, valid, and enforceable instruments, and the defenses and counterclaims Plaintiff asserted challenging them (which largely mirror the allegations asserted in this action) lacked merit. Therefore, all of the claims asserted in this adversary proceeding should be dismissed. The legality of the loan, guaranty and mortgage has been adjudicated. Further, all of Plaintiff's claims against Bank of Lake Mills are time barred and none state a claim upon which relief can be granted. Plaintiff's claims against Bank of Lake Mills should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

This case is about a January 2016 business loan Bank of Lake Mills ("BLM") made to Noah's Ark Preparatory II, Inc. ("Noah's Ark") (the "Business Loan") and its related documents,

including a promissory note executed on January 26, 2016 (the "Note"), a personal guaranty signed by Plaintiff dated January 26, 2016 (the "Guaranty"), and a Mortgage on Plaintiff's house executed on January 28, 2016 and recorded on February 18, 2016 (the "Mortgage") (collectively, the "Related Documents"). (DKT 1 (Compl.) at ¶¶ 31-34; 12 (WBL Mot. to Dis.); 12-1 (WBL Mot. to Dis. Ex. 1); 12-3 (WBL Ex. 3); 12-4 (WBL Ex. 4).) [1] The Related Documents describe Noah's Ark's and Plaintiff's obligations and define what constitutes an act of default and the consequences of default. (DKT 1 at ¶¶ 35-36; 12-2; 12-3; 12-4.) BLM assigned the Business Loan and Related Documents to World Business Lenders, LLC ("WBL") (DKT 1 at ¶¶ 66-68; 12-1 at ¶ 4; 12-6 (WBL Ex. 5) and took no further action. (*See, e.g.,* DKT 1 at ¶¶ 235-253.)

Prior to signing the Business Loan and Related Documents, Plaintiff requested and received additional information regarding the Note's payment terms and interest rate. (DKT 1 ¶ 53.) Noah's Ark defaulted on the Note and Plaintiff defaulted on the Guaranty in April 2016. WBL initiated foreclosure proceedings against Plaintiff and Noah's Ark in the Kings County Supreme Court in July 2016 ("Foreclosure Action"). (DKT 1 at ¶¶ 175-78; 12-10 (WBL Ex. 9).) BLM was not a party to the Foreclosure Action. (*Id.*) Noah's Ark and Plaintiff filed a Verified Answer with Counterclaims in the Foreclosure Action, admitting that she executed the Note, but denied the remainder of the substantive allegations and asserted various affirmative defenses. The affirmative defenses included assertions that WBL violated GBL § 349 and committed fraud, and challenged the legality of the Business Loan. (DKT 12-13 (WBL Ex. 12).) Noah's Ark and

---

[1] WBL attaches various documents that Plaintiff referenced and relied upon in her Complaint (but that she did not attach to the Complaint) relating to the Business Loan and the Foreclosure Action. As such, the court may rely on these documents on a motion to dismiss. *See e.g. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that the district court could consider documents of which the plaintiff had notice and which were integral to their claim in ruling on motion to dismiss even though those documents were not incorporated into the complaint by reference.) Rather than reattach them, here, BLM refers to their docket references in this adversary proceeding.

Plaintiff's counterclaims similarly included claims for fraud, violation of GBL § 349, and violation of usury laws. (*Id.*) These counterclaims were the focus of WBL's motion for summary judgment, which Noah's Ark and Plaintiff opposed. (DKT 12-21 (WBL Ex. 20); 12-24 (WBL Ex. 22).) On May 2, 2019, the Court entered an order granting summary judgment in favor of WBL, striking and dismissing the Verified Answer with Counterclaims with prejudice. (DKT 12-28 (WBL Ex. 26).) Noah's Ark and Plaintiff did not challenge or appeal the judgment.

On March 23, 2022, days before the scheduled foreclosure sale, Plaintiff filed for Bankruptcy before this Court. (DKT 12-39 (WBL Ex. 37).) SPE III, a WBL-related entity,[2] filed a proof of claim. (DKT 1 at ¶ 23; 12-41 (WBL Ex. 39).) BLM did not.

On August 13, 2023, Plaintiff initiated this adversary proceeding against WBL, its principal, several related entities, and BLM, alleging ten causes of action including violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 891-894 (a criminal statute), the Equal Credit Opportunity Act, New York GBL § 349, and recoupment of Defendants' Proof of Claim, all of which are premised upon the Business Loan and Related Documents. (*See generally,* DKT 1 at ¶¶ 57-326.) Plaintiff has asserted the following causes of action against BLM:[3]

- Third Cause of Action – Violations of RICO, 18 U.S.C. § 1962(c), Association in Fact Enterprise

- Sixth Cause of Action – Violation of 18 U.S.C. §§ 891-894, Extortionist Credit Transaction Enterprise

---

[2] For ease of readability, BLM will refer to WBL rather than SPE III in this brief, with regard to actions in the Bankruptcy proceeding.

[3] Although at first glance Count I – Violation of 18 U.S.C. 1962(b), (c), (d), Kings County Supreme Court (Kings Enterprise) purports to be against all Defendants, paragraph 58 of the Complaint makes clear that BLM is exempted: "This cause of action is asserted against all Defendants except Lake Mills." Indeed, this Count pertains to actions in the Foreclosure Action, to which BLM was not a party.

- Seventh Cause of Action – Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)

- Eighth Cause of Action – Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*

- Ninth Cause of Action – Violation of General Business Law § 349

## **LEGAL STANDARD**

Federal Rule of Bankruptcy Procedure Rule 7012(b) makes Federal Rule of Civil Procedure 12(b)(6) applicable to adversary proceedings commenced in Bankruptcy Court. On a FRCP 12(b)(6) motion to dismiss for failure to state a claim for relief, a court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not constitute sufficient factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art)*, 593 B.R. 699, 710-12 (Bankr. S.D.N.Y. 2018).

As Bankruptcy Judge Vyskocil stated in *Chowaiki* "[an] [Amended] Complaint states a claim that is facially plausible when the factual content pleaded therein is sufficient to "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 711. The plausibility standard is not akin to a probability requirement but requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 711 (quoting *Twombly*, 550 U.S. at 557). "Plausibility" involves a number of considerations, including (a) the full factual picture presented by the complaint and the particular cause of action and its elements, and (b) the existence

4

of alternative explanations so obvious that they render plaintiff's inferences unreasonable. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citing *Iqbal*, 556 U.S. at 674-831). Courts are "not required to draw unreasonable inferences or to credit legal conclusions at odds with plaintiff's own factual allegations." *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) (quoting *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y. 1998).

A complaint that merely contains "'naked assertion[s]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss. *In re Trinsum Grp., Inc.*, 460 B.R. 379, 387 (Bankr. S.D.N.Y. 2011). *See also Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 51 (Bankr. S.D.N.Y. 2023). For the reasons set forth below, the claims asserted against BLM in Plaintiff's Adversary Complaint ("Complaint") fall woefully short of satisfying these well-established pleading standards.

Moreover, all of Plaintiff's claims against BLM should be dismissed with prejudice, and any request by Plaintiff to amend her complaint should be denied – at least with respect to her claims against BLM. Federal Rule of Civil Procedure 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for ... 'futility of amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Rodriguez v. Touchette*, No. 19-cv-143, 2020 WL 2322615 at *7 (D. Vt. May 11, 2020); *U.S. ex rel. Raffington v. Bon Secours Health Sys.*, 285 F. Supp. 3d 759, 765-66 (S.D.N.Y. 2018); *Jansson v. Stamford Health, Inc.*, No. 16-cv-260, 2017 WL 1289824, at *5 (D. Conn. Apr. 5, 2017). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss under to Rule 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). *See also Bello v. Rockland Cnty.*, No. 19 CV 3514, 2020 WL 2319115 at

*7 (S.D.N.Y. May 11, 2020); *Anwar v. Fairfield Greenwich Ltd.*, 118 F Supp 3d 591, 598 (S.D.N.Y. 2015).

In this case, the facts Plaintiff alleges are static and do not support her existing claims for relief much less any future amendments. All of her claims against BLM are time barred by applicable statutes of limitation to which no tolling exceptions apply, and Plaintiff does not, and cannot allege facts sufficient to plausibly support necessary elements of any of her claims against BLM. As such, no amendment could withstand dismissal and, therefore, would be futile.

## ARGUMENT

### I.    BLM JOINS WBL'S MOTION TO DISMISS AS TO ITS ARGUMENTS RELATING TO SUBJECT MATTER JURISDICTION AND ABSTENTION.

BLM joins, and incorporates by reference, WBL's arguments in support of its separate Motion to Dismiss related to subject matter jurisdiction under the doctrines of *res judicata* and the *Rooker-Feldman* doctrine. (DKT 12-1 at 15-23.) The claims asserted against BLM are premised on the very same loan, mortgage and guarantee that were litigated and deemed valid and enforceable by the Supreme Court of Kings County in the Foreclosure Action. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

BLM also joins, and hereby incorporates by reference, WBL's arguments in support of its separate Motion to Dismiss related to abstention. (DKT 12-1 at 23-27.) The requisites for the doctrines underlying permissive, *Younger*, and *Colorado River* abstention are satisfied as outlined in WBL's brief, and they are particularly relevant to BLM. The only conduct alleged as to BLM is that it made the Business Loan and then assigned it to WBL. (DKT 1 at ¶ 246.) It had no role in WBL's collection efforts, was not a party to the Foreclosure Action, nor did it avail itself of this Court's jurisdiction by filing any proof of claim. Nevertheless, it is now a defendant in this adversary proceeding, even though it engaged in no wrongdoing and the Supreme Court of Kings

County entered judgment deeming the Business Loan and Related Documents valid and enforceable. Plaintiff could have appealed the Supreme Court's Summary Judgment Order, but she did not. Accordingly, she is foreclosed, as a matter of law from relitigating the validity of the Loan and Related Documents before this Court.

## II.  PLAINTIFF'S RICO CLAIMS AGAINST BLM SHOULD BE DISMISSED AS TIME BARRED AND BECAUSE THEY FAIL TO STATE A CLAIM.

Plaintiff alleges that BLM violated the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), by participating in an unlawful "association in fact" enterprise with the other defendants (Third Cause of Action) and conspiring with them to commit various predicate acts (Seventh Cause of Action). These claims, like all of the claims asserted against BLM, arise solely from a January 2016 loan that BLM made to Plaintiff's business, that was secured by the Guaranty, which was backed by the Mortgage. However, the court in the Foreclosure Action, years ago, entered judgment adjudicating them as valid and enforceable instruments, and disposing of Plaintiff's affirmative defenses and counterclaims challenging their legality. These facts alone are dispositive of Plaintiff's claims against BLM in this adversary proceeding.

Further, "[I]t is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." *Am. Fed'n of State v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013) (citing *Rosenson v. Mordowitz,* No. 11 Civ. 6145, 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012)). Recognizing that civil RICO is the "litigation equivalent of a thermonuclear device," courts have acknowledged that frivolous RICO allegations must be dismissed at an early stage in the litigation. *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996); *see also Am. Fed'n of State*, 948 F. Supp. 2d at 345 ("[C]ourts have an obligation to scrutinize civil RICO claims early in the

litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.").

Courts must ensure that RICO's severe penalties are limited to "enterprises consisting of more than simple conspiracies to perpetrate the predicate acts of racketeering." *U.S. v. Davidson*, 122 F.3d 531, 534 (8th Cir. 1997), and they should be on the lookout for the putative RICO case that is really "nothing more than an ordinary fraud case clothed in the emperor's trendy garb." *In re Integrated Res. Real Est. Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1148 (S.D.N.Y. 1993).

This case is simply a garden variety lender liability claim. It is premised on a single loan, a personal guaranty, and a mortgage executed in 2016 that have previously been fully and finally adjudicated as valid, enforceable, and binding instruments in the Foreclosure Action. None of Plaintiff's incendiary rhetoric and hyperbole can change that. As demonstrated below, Plaintiff's Third and Seventh Causes of Action must be dismissed because the only facts alleged and regarding BLM fall well outside RICO's four-year statute of limitations, and on the merits because she fails to allege facts sufficient to support necessary elements of RICO.

A.    **Plaintiff's RICO Claims are Barred by the Four-Year Statute of Limitations.**

The statute of limitations for a civil RICO action is four years. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) ("[T]he federal policies that lie behind RICO and the practicalities of RICO litigation make the selection of the 4–year statute of limitations . . . the most appropriate limitations period for RICO actions."); *see also Rotella v. Wood*, 528 U.S. 549, 552 (2000).

The statute of limitations begins to run "when the plaintiff discovers or should have discovered the RICO injury," and not when the plaintiff discovers that the injury stems from a pattern of racketeering. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)

(citation omitted); *see also Rotella*, 528 U.S. at 555 ("[W]e have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."). The Second Circuit has adopted an "inquiry notice" standard for starting the statute of limitations clock, meaning a RICO plaintiff is not required to have actual knowledge of their RICO injury for the clock to begin. *See Merrill Lynch Ltd*., 154 F.3d at 60 (where the statute of limitations began to run once plaintiffs received documents that "should have alerted" [them] that they had been misled.").

The Second Circuit also recognizes the "separate accrual rule" whereby a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *Merrill Lynch*, 154 F.3d at 59; *see also Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) ("[E]ach time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred.").

However, a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp*., 521 U.S. 179, 190 (1997). "[A] plaintiff who is continuously injured by an underlying RICO violation may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Nat'l Grp. for Commc'ns and Computs. Ltd. v. Lucent Techs. Inc*., 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) (citing *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995)).

According to her Complaint, Plaintiff discovered the injury caused by BLM's alleged RICO violations in 2016. She alleges that BLM violated RICO by issuing the Note to her dated January 26, 2016 and facilitating the execution of the Mortgage on January 28, 2026. (DKT 1 at

¶¶ 32, 34.) On March 22, 2016, she wrote to WBL expressing concern that the loan was attached to her house. (DKT 1 at ¶ 53.) This correspondence occurred after BLM assigned the note and mortgage to WBL. (DKT 1 at ¶ 68.)

On July 19, 2016, after Plaintiff stopped making payments on her loan, the WBL defendants initiated a foreclosure action against Plaintiff in Kings County, NY, Index No.:512316/2016. (DKT 12-10.) In that Complaint, WBL alleged that "For good and valuable consideration, [Jordan] made, executed, and delivered to Lake Mills ("Original Lender") a note in the principal amount of $275,000.00, dated January 26, 2016." (DKT 12-10 at ¶ 4.) WBL further alleged that "By virtue of an assignment of mortgage Plaintiff took title [sic] plaintiff is the assignee of all rights, title and interest in and to a certain note, mortgage and personal Guaranty . . . from Bank of Lake Mills, N.A. ("Lake Mills")." (DKT 12-10 at ¶ 1.)

On August 16, 2016, Plaintiff answered, alleging as part of her fifth affirmative defense that WBL charged her "an amount of interest for the said loan that is violative of NY General Obligations Law § 5-501 (1); NY Banking Law § 14-a(1); and NY Penal Law § 190.40." *See* (DKT 12-13 at ¶ 9.) Accordingly, she had notice of any alleged injury associated with the loan no later than August 16, 2016, when she asserted her affirmative defense in the foreclosure action. As a result, any RICO claim associated with her injury was barred as of August 16, 2020. Plaintiff commenced this action on August 13, 2023, nearly three years after the statute of limitations ran. Therefore, all of Plaintiff's RICO claims against BLM must be dismissed.

**B.    Plaintiff's Third Cause of Action Asserted against BLM Fails to Allege Necessary Elements of RICO.**

In order to properly plead a civil RICO claim under §1962(c), "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Purchase Real*

*Est. Grp. Inc. v. Jones*, No. 05 Civ. 10859, 2010 WL 1837809, at *5 (S.D.N.Y. Apr. 30, 2010).[4]

Significantly, these "requirements ... must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Plaintiff fails to properly allege facts plausibly supporting any of them.

> 1. **The Complaint Fails to Allege that BLM Engaged in a Pattern of Racketeering Activity.**

With respect to BLM, the Complaint alleges that Plaintiff suffered harm because BLM made the Business Loan supported by the Guaranty and Mortgage that WBL, its assignee, sought to enforce after she defaulted. Nothing more. However, RICO imposes liability only on individuals working for an enterprise that commit certain predicate crimes that amount to a "pattern of racketeering activity." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). To plead a pattern of racketeering activity, Plaintiff must allege, at a minimum, that BLM committed two predicate acts within ten years. 18 U.S.C. § 1961(5).

Plaintiff does not and cannot do so. As discussed above, Plaintiff challenged the validity of the Business Loan and Related Documents years ago in the Foreclosure Action. It is undisputed that the Court entered judgment adjudicating them as valid enforceable and binding instruments. As such, none of BLM's conduct allegedly contributing to Plaintiff's alleged injury can now constitute predicate acts, *i.e.*, crimes necessary to establish a pattern of racketeering activity to support a RICO claim. Accordingly, Plaintiff's Third Cause of Action should be dismissed for this reason alone.

---

[4] In the alternative to allege a pattern of racketeering activity, a plaintiff can also allege that the enterprise engaged in the "collection of unlawful debt." §1962(c). However, a court of competent jurisdiction, Kings County (State of New York), has already found the collection of debt to be lawful in the Foreclosure Action. Accordingly, this alternative basis to establish liability under §1962(c) does not apply to this case.

### 2. The Complaint Fails to Allege that BLM Operated, Managed, Directed or Controlled Any Enterprise.

The United States Supreme Court has clearly articulated the type of facts that a plaintiff must allege to support the "conduct of an enterprise" element of a RICO charge. *See Reves v. Ernst & Young*, 507 U.S. 170, 179-185 (1993). In *Reves*, the Court explained that liability under § 1962(c) requires a plaintiff to show that a defendant conducted or participated in the conduct of the enterprise's affairs, not just their own affairs. *Id.* at 185. To satisfy the "conduct" element of § 1962(c), the plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played some part in "directing the enterprise's affairs." *Id.* at 179, 183. "[M]ere participation in the activities of the enterprise is insufficient." *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). As the Supreme Court recognized in *Reves*, a defendant conducts or participates in the conduct of enterprise affairs by exerting control over its operation, for example, by bribery. 507 U.S. at 184.

Plaintiff does not allege that BLM participated in the operation or management of, or controlled or directed the affairs of any enterprise. Instead, the Complaint alleges the exact opposite – it repeatedly alleges that WBL controlled BLM:

> BLM was not the true lender, rather a subterfuge, a device used by WBL to avoid complying with the state regulated laws including usury cap limit. WBL falsely claimed that the loan was BLM loan, when it [sic] fact it had devised the terms, enforcement and ultimately recovery on the loan. WBL was the cat and BLM, the cat's paw to run the racketeering scheme to avoid detection by law enforcement agencies and bring extortionist credit to the vulnerable borrowers.

(DKT 1 at ¶ 28.)

Plaintiff goes even further in her contention that WBL directed the enterprise's affairs later on in her complaint:

> [WBL] led the deal. It contacted the plaintiff and it prepared the paperwork, it did everything before, during and after the transaction with the bank of Lake Mills. Lake Mills bank was the cat's paw, WBL, the cat. WBL used Lake Mills as the conduit for its loan. In fact, WBL made all the arrangements for the loan (advertising, underwriting, determining loan amount, and so forth) and takes all the economic risk from the loan—thus making it the true lender.

(DKT 1 at ¶ 40.)

Plaintiff does not and cannot allege that BLM operated, managed, directed or controlled an enterprise's affairs. The best-case scenario for her is that she may have alleged that BLM merely participated in the activities of an enterprise which, under *Reves*, is insufficient. Accordingly, the Third Cause of Action fails to satisfy yet another essential element of RICO, as to BLM, and, therefore, must be dismissed.

### C.     Plaintiff's Seventh Cause of Action Fails to State a Claim under § 1962(d).

The Second Circuit has held that there can be no RICO conspiracy without an underlying substantive RICO violation. *See Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) ("[I]f the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations.'"). "[F]ailure to adequately plead facts that would satisfy the pleading requirements of 1962(a), 1962(b), or 1962(c) dooms any claim [plaintiff] might assert arising under 1962(d)." *Id*. at 541. As demonstrated above, Plaintiff fails to allege facts sufficient to plausibly support at least two elements necessary to state a RICO claim against BLM, and as a result, Plaintiff's Seventh Cause of Action must be dismissed.

### III.    PLAINTIFF'S SIXTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM AND PLAINTIFF LACKS STANDING

Plaintiff's Sixth Cause of Action ("Extortionist Credit Transaction") alleges a violation of a criminal statute, 18 U.S.C. §§ 891-894. It is not clear whether Plaintiff pleads this claim as part

of her RICO claims (Plaintiff's other RICO claims against BLM are clearer on their face, both specifically mentioning RICO in the title), or as a stand-alone claim. Either way, this claim fails and must be dismissed.

First, if pled as part of her RICO claims, the claim fails for the reasons stated in Section II above. Plaintiff's RICO claims are barred by RICO's four-year statute of limitations, and her allegations fail to plausibly support essential elements of a civil RICO claim – namely she fails to properly allege that BLM engaged in a pattern of racketeering activity or that it participated in the operation or management of an enterprise.

Second, Plaintiff does not have standing to bring a stand-alone claim under 18 U.S.C. §§ 891-894, which provide only for criminal penalties. *See e.g., Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). As several courts have held, the statutes giving rise to Plaintiff's Extortionist Credit Transaction claim do not create a private cause of action. *See Khepera-Bey v. Santander Consumer USA, Inc.*, No. WDQ-11-1269, 2012 WL 1965444, at *8 (D. Md. May 30, 2012) (dismissing claims brought under 18 U.S.C. §§ 892 and 894 "because they do not provide a private cause of action"); s*ee also Stewart v. Santander Consumer USA Inc.*, No. WDQ-11-1269, 2011 WL 4790756, at *4 (D. Md. Oct. 6, 2011) (same); *Jurgensen v. Hamalian*, No. 18-CV-01952, 2019 WL 3291761 (D. Colo. Mar. 7, 2019), *report and recommendation adopted*, No. 18-CV-01952, 2019 WL 2521677 (D. Colo. June 18, 2019) (same); *Lillacalenia v. Kit Fed. Credit Union*, No. 14CV-151, 2014 WL 3940289, at *2 (W.D. Ky. Aug. 12, 2014) (same).

Finally, the premise of this claim, like all of her claims, is the Business Loan and Related Documents that the Court in the Foreclosure Action already adjudicated as valid, enforceable and

binding instruments. Accordingly, Plaintiff's claims brought pursuant to 18 U.S.C. §§ 891-894 should be dismissed.

## IV. PLAINTIFF'S EQUAL CREDIT OPPORTUNITY ACT CLAIM SHOULD BE DISMISSED AS TO BLM BECAUSE IT SIMILARLY IS TIME BARRED AND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count Eight of the Complaint alleges that BLM and other defendants violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*. ("ECOA"), by targeting Plaintiff for a loan because of her race. This claim is time-barred by the ECOA's five-year statute of limitations. Plaintiff alleges that the violative loan transaction was entered into in January 2016 but, she failed to assert her claim until August 2023. Moreover, there are no applicable exceptions warranting any equitable tolling of the statute of limitations, and analysis of the Complaint makes clear that Plaintiff is not entitled to any relief under the ECOA. This claim must be dismissed.

### A. The Statute of Limitations on Plaintiff's ECOA Claim began to Run at the Time She Executed the Loan Documents in January 2016.

The ECOA prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age. 15 U.S.C. § 1691(a)(1). The statute creates a private cause of action for any applicant who alleges that a creditor engaged in prohibited discrimination, provided that the action is not "brought later than 5 years after the date of the occurrence of the violation." 15 U.S.C. § 1691e(a) and (f). Where the alleged ECOA violation is based on the defendant's alleged discriminatory targeting of the plaintiff for a predatory loan (rather than a discriminatory denial of a credit application), the "violation" occurs – and the statute of limitations begins to run – on the date the credit transaction becomes final. *See In re Johnson*, No. 09-49420, 2014 WL 4197001, at *18 (Bankr. E.D.N.Y. Aug. 22, 2014) ("Johnson commenced this action more than two years after he entered into his home loan. As a result, his claims are

barred by the ECOA's two-year[5] limitations period"); *see also, Gordon v. First Franklin Fin. Corp.*, No. 16-CV-0775, 2016 WL 792412, at *9 (E.D.N.Y. Feb. 29, 2016) (explaining that the ECOA's statute of limitations begins to run "at the time of the challenged loan transaction"); *Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*, No. 19CV1045, 2020 WL 1536596, at *9 (E.D.N.Y. Mar. 31, 2020) ("[E]ven had Plaintiff stated a valid ECOA claim, such a claim would be time-barred under ECOA's five-year statute of limitations, which began to run, at the latest … when Plaintiff's home mortgage loan was executed.").

Here, Plaintiff alleges that the Defendants violated the ECOA by targeting her for a high interest loan because she was a minority. Plaintiff alleges that she executed the Note, Guaranty, and Mortgage, on January 26 and January 28, 2016. (DKT 1 at ¶¶ 32-34.) As such, the operative loan transaction occurred no later than January 28, 2016. Under the ECOA, Plaintiff had until January 28, 2021 to assert a claim. She filed her Complaint on August 8, 2023—almost twenty-eight months after the statute of limitations ran. Accordingly, this claim is time-barred.

## B. No Exception to the ECOA's Five-Year Statute of Limitations Applies.

Plaintiff's time-barred ECOA claim could only survive if an exception to the general rule applies. *See In re Johnson*, 2014 WL 4197001 at *18 ("[Plaintiff's] claims are barred by the ECOA's two-year limitations period unless an exception, such as the federal discovery rule, equitable tolling, or the continuing violation doctrine, applies."). None does. Plaintiff has not alleged any facts to show that equitable tolling is appropriate. Further, several courts have held that the doctrine does not apply to ECOA claims. Nor does the Complaint properly allege any continuing violation of the ECOA such that the statute of limitations should be extended.

---

[5] The ECOA's statute of limitations was extended from two to five years, effective July 21, 2010. *See* 15 U.S.C. § 1691e(f) (2010), *amended by* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 11-203, 124 Stat. 1376 (2010). Plaintiff's claims are barred under either limitations period.

Equitable tolling "is an extraordinary measure that applies only when [a] plaintiff is *prevented* from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (emphasis added); *see also, Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (explaining that equitable tolling is only available in "rare and exceptional circumstances" where the court finds that "'extraordinary circumstances' prevented a party from timely [bringing a claim], and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'") (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). Equitable tolling should only be applied where "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (quoting *Miller v. Int'l Te. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985); internal quotation marks omitted). To establish the requisite circumstances for equitable tolling, Plaintiff must allege facts demonstrating that: (1) BLM concealed from her the existence of the ECOA claim; (2) that she remained in ignorance of the ECOA claim until some point within the commencement of the five-year limitations period; and (3) that her continuing ignorance was not attributable to a lack of diligence on her part. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).

Plaintiff has failed to allege any facts to support applying such an extraordinary measure in this case. She has not alleged any facts to show that the BLM (or any other Defendant) acted to conceal the ECOA claim, that she did not know of the ECOA claim, or that she acted diligently in trying to discover the claim. *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 503 (S.D.N.Y. 2015) (declining to apply equitable tolling to plaintiff's claims under the ECOA, CCPA and FHA where plaintiff failed to allege "any specific ways in which defendants prevented [her] from asserting timely claims"). *See also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 290

(S.D.N.Y. 2011) (equitable tolling not appropriate where plaintiffs failed to allege that defendants concealed the claim during the statute of limitations or when they learned of their ECOA claim).

Moreover, as this Court has previously recognized, several courts—including courts in this Circuit—have held that equitable tolling does not apply to ECOA claims, as a matter of law. *See In re Johnson*, 2014 WL 4197001 at *18 (discussing cases). For example, the Fifth Circuit has held that "a discovery rule does not apply to ECOA claims. . .. This is a statute of repose establishing with clear text a jurisdictional bar under which federal courts lack the power to extend the period to allow for late adjudication of claims." *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (internal quotation marks omitted). The Southern District of New York has also held that the "ECOA's text . . . does not support a discovery rule." *Adkins v. Morgan Stanley*, No. 12 CV 7667, 2013 WL 3835198, at *7 (S.D.N.Y. July 25, 2013). The reasoning in both *Archer* and *Adkins* was largely based on the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19, 33 (2001), in which the court held that the text of the Fair Credit Reporting Act did not support equitable tolling. In *Andrews*, the Supreme Court explained that the discovery rule could not be applied to the FCRA because the statute provided that the statute of limitations began to run on when "liability arises," that is, "the date of the occurrence of the violation." As the Fifth Circuit reasoned in *Archer*, the ECOA uses the same restrictive language as the FCRA, and, following the Supreme Court's logic, the equitable tolling doctrine should also not apply to ECOA claims. *Archer*, 550 F.3d at 509.

This Court should adopt the same approach. The text of the ECOA unambiguously requires a potential plaintiff to bring a claim within five years of the alleged violation, except in two limited exceptions where a plaintiff becomes aware of discrimination after the government commences enforcement proceedings to bring an action—neither of which apply here. The Second Circuit has

warned that applying the equitable tolling doctrine "too liberally . . . threatens to undermine the purpose of statutes of limitations of allowing potential defendants predictability and ultimate repose." *Building Service 32B-J Pension Fund*, 393 F.3d at 326.

Lastly, Plaintiff also appears to allege that BLM and the other Defendants have engaged in "continuing violations" of the ECOA. (*See* DKT 1 at ¶ 301.) ("WBL maintained its practice continuously, and it represents a continuing violation of 15 U.S.C. § 1691(a)(1)."). "Under the continuing violation doctrine, a court can allow recovery for violations outside the applicable limitations period if those violations are so closely related to violations within the limitations period that they can be regarded as a single continuing violation." *In re Ditech Holding Corp.*, No. 19-10412, 2022 WL 14964188, at *11 (Bankr. S.D.N.Y. Oct. 26, 2022) (citing *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020)). "Where, by contrast, plaintiffs complain of 'discrete acts' separated in time, the usual limitations rule applies." *Id.* (quoting *DeSuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021)). However, "[c]ourts in the Second Circuit have been loath to apply the [continuing violation doctrine] absent a showing of compelling circumstances." *Id. See also In re Johnson*, 2014 WL 4197001 at *18 ("[T]he continuing violation doctrine is not favored in this Circuit, and it is applied only in compelling circumstances.").

Plaintiff, however, has failed to allege any facts supporting her continuing violation theory. The allegation is contained in a single conclusory sentence with zero factual support ("WBL maintained its practice continuously, and it represents a continuing violation"). Plaintiff makes no attempt to explain what actions constitute a continuing violation of the ECOA, and, as such, the allegation is nothing more than a bald legal conclusion that the Court should disregard. Moreover, to the extent Plaintiff bases her continuing violation theory on the notion that the Defendants continued to extend loans to other minorities after her own loan, the doctrine is misapplied.

Separate allegedly discriminatory acts that are not related to a plaintiff's own claim do not constitute a "continuing violation" of the ECOA. "[T]he continuing-violation theory does not apply to 'separate' actions . . . even if undertaken by the same entity for a common discriminatory purpose, do not compromise a continuing violation." *Chase Manhattan Bank*, 91 F. Supp. 3d at 503 (citations omitted). *See also Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*, No. 19-CV-1045, 2020 WL 1536596, at *9 (E.D.N.Y. Mar. 31, 2020) ("Here, Plaintiff has failed to adequately plead a continuing violation of either the FHA or ECOA, for she asserts only that the continuing violation is that her mortgage was originated and assigned into a discriminatory mortgage loan. This vague and conclusory statement does not allege an ongoing policy of discrimination *against Plaintiff by Defendant*.") (emphasis added); *Grimes*, 785 F. Supp. 2d at 295 ("Plaintiffs have not pled a continuing violation of the ECOA . . . although Plaintiffs do seem to allege that Defendants have discriminated against other African-Americans as well, that is insufficient to establish a continuing violation, where Plaintiffs have alleged no specific instances of other discriminatory acts, nor dates on which this conduct purportedly began or concluded."); *Phillips v. Better Homes Depot, Inc.*, No. 02-CV-1168, 2003 WL 25867736, at *24 (E.D.N.Y. Nov. 12, 2003) (rejecting plaintiff's continuing ECOA violation theory based on defendants allegedly having targeted other minorities after it discriminated against her). Even assuming that the Defendants did in fact extend loans to other minorities after Plaintiff's loan in January 2016, these are separate, unrelated transactions, and cannot constitute a continuing violation against Plaintiff.

## C. Plaintiff Has Failed to State a Claim for a Violation of the ECOA.

Even assuming, *arguendo,* that Plaintiff's ECOA claim is not time-barred (it is), she does not state a claim under the ECOA. Plaintiff appears to allege both a "disparate treatment" and "disparate impact" liability theories but fails to allege facts sufficient to support either. Peeled back

from the emotionally charged rhetoric in the Complaint, her allegations are vague, conclusory, and wholly insufficient.

Plaintiff's disparate treatment theory is based on her allegations that she was discriminated against when BLM and other defendants targeted her for a loan because of her race, a version of discrimination under the ECOA often referred to as "reverse redlining." *In re Johnson*, 2014 WL 4197001 at *16. "Reverse-redlining plaintiffs can establish an ECOA claim by showing that they were discriminated against in the terms of their credit based on the sex, marital status, or age." *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434, 2010 WL 889256, at *11 (E.D.N.Y. Mar. 10, 2010) (internal quotation marks and citation omitted). "In essence, reverse-redlining discriminates by lending to a group of persons on less favorable terms than those borrowers would have received if they were outside that particular class of persons." *Id*.

Plaintiff's claim rests entirely on conclusory assertions that the Defendants intentionally sought her out for a loan because she is a minority. She does not point to any specific statement or action taken by the Defendants to create the reasonable inference that the Defendants pursued her because of her race. By claiming that BLM had no role in making the Business Loan, Plaintiff has precluded any amendment claiming that BLM made any statement or took any action. Nor does she allege that she was treated differently than other similarly situated credit applicants—*i.e.*, that the Defendants also issued loans to non-minority borrowers on better terms, which is central to a disparate treatment claim under the ECOA. *See id*. (dismissing plaintiff's disparate treatment ECOA claim where there were "no specific factual allegations that tend to show how [plaintiff] was treated any differently from similarly situated home buyers."). Of course, that the plaintiff was treated differently than other similarly situated borrowers is at the "heart" of a disparate treatment

21

claim under the ECOA, and Plaintiff's failure to allege that non-minority borrowers were treated differently than her is fatal to her claim. *HSBC Mortg. Corp.*, 2010 WL 889256, at *11.

Plaintiff's disparate impact theory is equally unsupported, and, fundamentally flawed. Plaintiff alleges that the Defendants' "practice of acquiring liens on homes and businesses of minorities has a disproportionate and unjustified impact on minorities." (DKT 1 at ¶ 293.) "To establish a prima facie case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group." *In re Johnson*, 2014 WL 4197001 at *19 (quoting *Powell v. Am. Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004)). As a fundamental matter, the ECOA expressly prohibits discrimination against *applicants* – not borrowers to whom loans have already been issued. Simply put, a practice that applies only to borrowers, as opposed to credit applicants, fundamentally cannot constitute a violation of the ECOA. Moreover, even if the Defendants' practice of obtaining liens on property could violate the ECOA, Plaintiff's "factual allegations with respect to the disparate impact claim amount to little more than use of the legal term *disparate impact*." *HSBC Mortg. Corp.*, 2010 WL 889256 at *12 (emphasis added). Plaintiff fails to allege any facts—aside from her own bald conclusions—that this practice has had a disproportionately negative impact on minorities. Nor does she point to any statistical data or evidence. Because Plaintiff's disparate impact theory is "alleged with little more than buzzwords and conclusory labels, in the absence of the requisite factual allegations," the claim must be dismissed. *Id.*

## V. PLAINTIFF'S GBL § 349 CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS AND FAILS FOR FAILURE TO STATE A CLAIM.

### A. The GBL § 349 Claim is Barred by the Statute of Limitations.

New York's General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law §349(a). Such claims are subject to a three-year statute of limitations, with accrual occurring "when plaintiff has been injured by a deceptive act or practice" that violates the statute. *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001) (quotations and citations omitted). There is no discovery rule applicable to § 349 claims, and as described in Section IV(B), above, equitable tolling is only available in extraordinary circumstances not present here. *See e.g., Wender v. Gilberg Agency*, 716 N.Y.S.2d 40 (2000) (discovery rule inapplicable to § 349 claims) and *Veltri*, 393 F.3d at 322 (standards for equitable tolling).

Here, Plaintiff was allegedly injured and her claim accrued at the very latest when she entered into the Business Loan in January 2016, and her claim is, therefore, many years stale. The discovery rule is unavailable to her and, as fully described in Section IV(B), above, she cannot demonstrate that equitable tolling applies. As such, Plaintiff's § 349 claim should be dismissed as time-barred.

### B. Plaintiff does not and Cannot Satisfy the Elements of a GBL § 349 Claim.

To state a claim under §349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343, 2015 WL 631962, *5 (E.D.N.Y Feb. 12, 2015). Plaintiff cannot meet any of these elements and cannot state a § 349 claim. Indeed, she brought this claim as part of the Foreclosure Action, and the New York Supreme Court dismissed it on Summary Judgment. (DKT 12-23; 12-24; 12-28.)

### 1. The Transaction at Issue is a Business-to-Business Transaction, which cannot Form the Basis of a GBL § 349 Claim.

At base, the GBL claim fails because the alleged deceptive acts pertain to a business loan. Indeed, "the statute is, at its core, a consumer protection device." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). A *consumer* is statutorily and narrowly defined as one who purchases goods and services for personal, family or household use. *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 295 (S.D.N.Y. 2012). As such, business-to-business transactions are generally not proper § 349 claims. *See Exxonmobil Inter-Am. Inc. v. Advanced Info. Eng'g Servs. Inc.*, 328 F. Supp. 2d 443, 448, 450 (S.D.N.Y 2004) (dismissing § 349 claim regarding supply contract between business entities). Where the contract is offered only to businesses and not to consumers or consumers at large, a section § 349 claim fails. *Id.* at 448. Moreover, "private contract disputes, unique to the parties, . . . would not fall within the ambit of the statute." *Id.* at 447; *see also Nials v. Bank of Am.*, No. 13 Civ. 5720, 2014 WL 2465289 at *3 (S.D.N.Y. May 30, 2014) (holding that the plaintiff failed to plead that defendant engaged in consumer-oriented conduct because litigation concerned "a private dispute between Plaintiffs and Defendants as to the title of a particular piece of property and mortgages and notes relevant to only the parties of" the litigation).

Plaintiff's claim against BLM is far afield from the consumer transactions § 349 was enacted to protect. As made clear by the Complaint and its exhibits, the Business Loan Application (DKT 1-4) designates Noah's Ark as the borrower, not Plaintiff or any other consumer. That fact is confirmed again and again by the Related Documents (DKT 1-1 – DKT 1-3), and the Complaint's allegations themselves (*see e.g.* DKT 1 at ¶ 35). Thus, the dispute at issue unequivocally constitutes a private, business-to-business transaction between BLM and Noah's Ark, and the § 349 claim fails for this overarching reason.

### 2. Plaintiffs' Claims of Deception and Misrepresentation are Belied by the Loan Documents.

Even if the loan were deemed a consumer transaction, Plaintiff has not and cannot argue BLM deceived her or made any material misrepresentation or omission in the context of the issuance of the loan. Courts have dismissed § 349 claims when, as here, "the business practice at issue was fully disclosed to the plaintiff." *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167 (E.D.N.Y. 2012). In *Serrano*, the Court reasoned "Cablevision's discretionary restriction of bandwidth or suspension of internet service" was "fully disclosed in the Terms of Service", therefore, Cablevisions actions were not misleading in a material way." *Id. See also Oxford Techs., Inc. v. East/West Indus.*, No. CV 18-1992, 2019 WL 5696184, at *8 (E.D.N.Y. Jul. 24, 2019) (dismissing § 349 claim because plaintiff's allegations were focused entirely on the private dispute that occurred between the parties concerning the terms of the Agreement in question and nothing in the complaint suggested that the transaction at issue affected the consuming public at large).

The terms of the Related Documents are crystal clear regarding Plaintiff's and Noah's Ark's obligations, including payment obligations and the consequences of failing to meet those obligations (DKT 1-1; 1-2; 1-3.) Indeed, Plaintiff even asked questions about the payment terms of the Note prior to executing it. (DKT 1, ¶ 53.) Consequently, Plaintiff has not alleged that there were any misleading or material statements made by BLM or that the loan documents contain any deceptive or misleading language. That fact was confirmed by the Court in the Foreclosure Action when it granted summary judgment to BLM's assignee, WBL.

### 3. The Court in the Foreclosure Action Determined the Loan Amounts were Proper, Due, and Owing, and so Plaintiffs have not Suffered an Actual Injury.

Finally, Plaintiff cannot allege an actual injury as required by § 349. Noah's Ark borrowed the money and did not repay it and Plaintiff could not satisfy the guarantee. As described above,

the Court in the Foreclosure Action agreed with BLM's assignee, WBL that the sums due and owing under the Related Documents were valid and enforceable when it granted summary judgment and dismissed all of Plaintiff's affirmative defenses and counterclaims, which invoked § 349 in challenging the propriety of the Loan and Related Documents.

For all the reasons set forth above, Plaintiff's § 349 claim against BLM should be dismissed.

## CONCLUSION

For the foregoing reasons, BLM respectfully requests that the Court grant its Motion and dismiss Plaintiff's claims with prejudice.

Dated: October 10, 2023
      Jericho, New York

**RIMON, P.C.**
Attorneys for Defendant, The Bank of Lake Mills

By: *s/David J. Mahoney*
    Anthony C. Acampora
    David Mahoney
    100 Jericho Quadrangle, Suite 300
    Jericho, NY  11753
    516-479-6300

Sean O'D. Bosack (*pro hac vice pending*)
Christie B. Carrino (*pro hac vice pending*)
GODFREY & KAHN, S.C.
833 E. Michigan Street, Suite 1800
Milwaukee, WI 53202
414-273-3500
Sbosack@gklaw.com
ccarrino@gklaw.com

Attorneys for Defendants, The Bank of Lake Mills